UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MELISSA S. GUYTON**, | Case Number 3:14 CV 149 |
| Plaintiff, | Judge James G. Carr |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | Magistrate Judge James R. Knepp II |

## INTRODUCTION

Plaintiff Melissa Guyton filed a Complaint (Doc. 1) against Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1) (Non-document entry dated January 24, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

On February 2, 2010, Plaintiff filed for DIB and SSI benefits alleging disability since June 1, 2007 due to tachycardia, shingles, chronic back pain, migraines, left-eye pain, vision problems, and Bell's palsy. (Tr. 171-74, 185-87). Plaintiff's claims were denied initially (Tr. 73-75) and on reconsideration (Tr. 79-81). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 82-83). Prior to the hearing, Plaintiff amended her alleged disability onset date to January 21, 2010, to reflect her protective filing date. (Tr. 302).

1

On September 10, 2012, Plaintiff (represented by counsel) and a vocational expert ("VE") testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 14, 39-70). On November 27, 2013 the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-5); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On January 23, 2014, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Personal and Vocational History*

Plaintiff was 41 years old at the time of her amended disability onset date. (Tr. 171, 302). She has a GED, which she obtained in 2008 and no past relevant work. (Tr. 29, 209); (Docs. 14, at 3;16, at 3). At the time of the hearing, Plaintiff lived with her parents and in terms of activities of daily living, watched television and would occasionally cook and go to the store. (Tr. 51-52).

*Medical Evidence*

Plaintiff's Physical Conditions

Plaintiff had a history of migraine headaches with facial numbness, weakness, and twitching. (Tr. 323-24). These symptoms improved with Topamax and Triptal. (Tr. 951-52). Plaintiff has also had asthma since childhood which often caused secondary infections such as bronchitis and required intervention with Prednisone in addition to inhalers. (Tr. 579-87, 1068-75). Plaintiff was evaluated for cardiac problems but her chest pain was thought to be due to neuropathic pain from osteoarthritis of the spine. (Tr. 966-67).

Beginning in December 2009, Plaintiff sought care numerous times for left knee pain that would not go away following a September 2008 motor vehicle accident. (Tr. 352-53, 362, 384-86). An April 2010 MRI revealed mild lateral patellar tilt and joint fluid. (Tr. 592).

Plaintiff had a history of lower back pain. In November 2009, Plaintiff had a lumbar spine x-ray which revealed narrowing of the L5-SI disc space, suggestive of disc disease. (Tr. 365). On June 16, 2011, an MRI revealed Plaintiff had mild degenerative disease at the L4-5 level. (Tr. 918).

Plaintiff had chronic right foot pain since at least April 2010. (Tr. 599). A right foot MRI taken April 21, 2010, showed changes of calcaneocuboid joint, effusions in the metatarsophalangeal and interphalangeal joint, and elongated anterior process of the calcaneus. (Tr. 590). On April 29, 2010, Plaintiff saw Jean Edna, D.P.M., who diagnosed osteoarthritis of the right foot and noted possible nerve damage, metatarsophalangeal ("MTJ") joint instability, and found that Plaintiff's left leg was shorter than her right. (Tr. 635-36). Plaintiff was treated conservatively with injections, whirlpool, taping, and orthotics. (Tr. 633-36). In March 2011, Plaintiff had outpatient surgery for a neuroma in the second interspace on the right. (Tr. 1104-06). Following this surgery, Plaintiff still struggled with pain and was subsequently prescribed a cane. (Tr. 1083-86, 1125-26).

Following an August 2010 motor vehicle accident, Plaintiff began experiencing neck pain. (Tr. 657-60). A CT scan of the cervical spine revealed minimal, degenerative disc disease of the mid-cervical spine. (Tr. 657). On May 9, 2011, Plaintiff was treated at St. Vincent Mercy Medical Center's Emergency Department for pain with finger numbness radiating from her right arm and hand to her neck that may have been a result of the whiplash she suffered during the August 2010 accident. (Tr. 980-87). An MRI on July 21, 2011, revealed Plaintiff had mild degenerative disc disease with small posterior disk osteophyte complexes. (Tr. 988-89). On December 9, 2011, Plaintiff saw Hossein Elgafy, M.D., who recommended a cervical discectomy

and fusion. (Tr. 949-50). Plaintiff's insurance denied coverage for this surgery because other, more conservative treatments had not been tried. (Tr. 1149).

Plaintiff's Mental Conditions

On September 16, 2010, Plaintiff saw Cheryl Thompson, PCC, at Harbor Behavioral Health for mental health treatment. (Tr. 767-70). On examination, Plaintiff's behavior was cooperative but she had an anxious mood; she had average intellect, her speech and judgment were normal, and she had partial insight. (Tr. 768-69). Ms. Thompson diagnosed major depressive disorder, recurrent, moderate, and social phobia, and assigned a global assessment of functioning ("GAF") score of 52.[1] (Tr. 769). On November 18, 2010, Plaintiff saw Carol Krieger, Clinical Nurse Specialist, who prescribed Prozac. (Tr. 1029). Plaintiff had continuing mental health treatment and counseling with Nurse Kreiger with fourteen visits through May 2012. (Tr. 1024-65). During this period, Nurse Krieger initially assigned a GAF score of 55,[2] and then consistently assigned GAF scores between 60 and 68.[3] (Tr. 1029, 1034, 1039, 1043, 1047, 1050, 1055, 1058, 1061, 1063, 1065, 1128). Plaintiff's mental status examinations during this time indicated she was consistently clean, alert, cooperative, with a good mood and generally good insight and judgment, although she struggled with anxiety, negative thoughts, and some compulsions. (Tr. 1026-28, 1033, 1038, 1041, 1045, 1049, 1054, 1058, 1061, 1063, 1065, 1127).

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51–60 reflects moderate symptoms (e.g., flat effect and circumstantial speech) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *DSM-IV-TR,* at 34.
2. *See* DSM-IV-TR, *supra,* note 2.
3. *See* DSM-IV-TR, *supra,* note 2. A GAF score between 61–70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *DSM-IV-TR,* at 34.

Medical Opinion Evidence

On July 12, 2010, Leigh Thomas M.D., reviewed the evidence of record and provided a physical RFC assessment. (Tr. 638-44). Dr. Thomas opined Plaintiff could occasionally lift up to twenty pounds and frequently lift ten pounds; stand, sit, or walk six hours in an eight-hour work day; push or pull including the use of hand or foot controls throughout the workday and climb ramps or stairs but not ladders, rope, or scaffolds. (Tr. 638-44). She had no visual deficits, communication deficits, or manipulation deficits; however Plaintiff could not work around hazardous machinery. (Tr. 638-44). Walter Holbrook, M.D., reviewed Dr. Thomas's assessment on October 30, 2010 and affirmed the RFC as written. (Tr. 864).

Plaintiff underwent a consultative examination in connection with her application on December 10, 2010 with Brian Griffiths, Psy.D. (Tr. 865-70). A mental status examination revealed a depressed and anxious mood/affect, but otherwise benign findings. (Tr. 867-68). Dr. Griffiths diagnosed major depressive disorder, recurrent, moderate, and anxiety disorder. (Tr. 869). Dr. Griffiths opined that Plaintiff's ability to relate to others was moderately impaired; her ability to understand/remember/follow simple instructions was mildly impaired; her ability to maintain concentration/persistence/pace was moderately impaired; and her ability to withstand the stress/pressure associated with day-to-day work was markedly impaired. (Tr. 869-70).

Shortly after examining Plaintiff on July 6, 2011, Plaintiff's primary care physician, Segunda Eudela, M.D., completed a Basic Medical Form for Lucas County Job and Family Services opining that Plaintiff was disabled and had not been able to work since October 2007, due to an unstable left knee, right foot pain, weakness of the right arm and shoulder, and a tendency to fall and drop things stemming from her neck osteoarthritis. (Tr. 915-17).  Dr. Eudela opined Plaintiff's tendency to fall and drop things would cause her to be a danger to herself and

others in the workplace. (Tr. 915-17). Dr. Eudela opined Plaintiff could stand/walk two to three hours and sit four to five hours in an eight-hour work day; could frequently lift/carry up to five pounds; her ability to push, pull, reach, and handle was moderately limited; her ability to bend was moderately to markedly limited; and her ability to do repetitive foot movements was markedly limited. (Tr. 917).

Shortly after examining Plaintiff on July 20, 2011, Nurse Krieger completed a Mental Functional Capacity Assessment for the Ohio Department of Job & Family Services. (Tr. 920). Nurse Krieger opined that Plaintiff's understanding and memory were markedly limited; her concentration and persistence were markedly limited except that she was only moderately limited in carrying out short and simple instructions and making simple work-related decisions; she was moderately limited in social interaction except that she was markedly limited in her ability to interact with the general public and in her ability to accept criticism from supervisors; and her ability to adapt was markedly limited except that she was only moderately limited in her ability to identify normal hazards and take appropriate precautions. (Tr. 920).

*VE Testimony*

A VE testified at the hearing before the ALJ. (Tr. 65-68). The ALJ asked about a hypothetical person with Plaintiff's vocational background, who was limited to sedentary work as defined by the regulations, with the additional limitations of not being able to climb ladders, ropes, ramps, or stairs; no more than occasional balancing, stooping, kneeling, crouching, or crawling; no repetitive foot movements; and who could not perform more than simple, routine repetitive tasks with no fast-paced production or interaction with the general public or more than occasional interaction with co-workers and supervisors. (Tr. 65-66). The VE said such a person could perform the jobs of account clerk, check weigher, and final assembler which were

6

available in significant numbers in the national economy. (Tr. 66). Plaintiff's counsel then asked the VE if there were jobs available for such a person if they were off-task more than fifteen percent of the work day due to marked limitation in the ability to maintain concentration, attention, and persistence. (Tr. 68). The VE indicated there were not. (Tr. 68). Plaintiff's counsel also asked if there were jobs available to such a person who needed to alternate sitting and standing more than two times per hour, and the VE indicated there were not. (Tr. 68).

*ALJ's Decision*

On October 10, 2012, the ALJ found Plaintiff had the severe impairments of history of tachycardia, degenerative disc disease of the cervical spine, left knee effusion, migraine headaches, asthma, obesity, Bell's palsy, major depressive disorder, anxiety disorder, and status post excision of right foot neuroma. (Tr. 19). Next, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. (Tr. 19). The ALJ determined Plaintiff had mild restriction in the activities of daily living; moderate difficulties in her social functioning and ability to maintain concentration, persistence, or pace; and that Plaintiff had suffered no episodes of decompensation of extended duration. (Tr. 20-21).

The ALJ then determined Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a), except she was further limited to work involving no climbing of stairs, ramps, ropes, ladders, or scaffolds and no repetitive foot movements; could do no more than occasional balancing, stooping, kneeling, crouching, or crawling; could not be exposed to hazards such as unprotected heights or dangerous machinery; and was limited to work that consisted of simple, routine, repetitive tasks with no fast-paced production work; no more than occasional interactions with co-workers or supervisors; no interactions with the general public; and no concentrated exposure to pulmonary irritants. (Tr. 21). Based on Plaintiff's vocational

background, RFC, and the VE's testimony, the ALJ found Plaintiff could perform a number of jobs in the national and regional economy, including charge account clerk, check weigher, and final assembler. (Tr. 30). Thus the ALJ found Plaintiff was not disabled. (Tr. 30).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ erred in evaluating the opinions of: 1) treating physician, Dr. Eudela; 2) treating advanced nurse specialist Krieger; and 3) consultative examiner, Dr. Griffiths. (Doc. 14, at 10). Plaintiff further contends that, because of these errors, the ALJ's RFC determination was not supported by substantial evidence. (Doc. 14, at 12-20). Each of these arguments shall be addressed in turn.

*Treating Physician Rule*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188, at *4). An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F. 3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009).

Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. 20 C.F.R. §§ 404.1502, 416.927. This includes a consultative examiner. *Id.* When determining what weight to give examining sources the same factors that are

10

considered for treating physicians must be considered including the supportability of the opinion and the consistency of the opinion with the record as a whole. *Id.*

Last in the medical source hierarchy are non-examining sources. These are physicians, psychologists, or other acceptable medical sources who have not examined the claimant, but review medical evidence and provide an opinion. 20 C.F.R. §§ 404.1502, 416.927. This includes state agency physicians and psychologists. *Id.* The ALJ "must consider findings and other opinions of [s]tate agency medical and psychological consultants . . . as opinion evidence", except for the ultimate determination about whether the individual is disabled. 20 C.F.R. § 404.1527(e)(2)(ii).

*Dr. Eudela*

Plaintiff argues the ALJ erred in assigning minimal weight to Dr. Eudela's opinion. (Doc. 14, at 13). Specifically, Plaintiff argues she is "physically more limited than found by the [ALJ] as documented by Dr. Eudela," and that, "outdated State agency opinion evidence was not substantial evidence to the contrary." (Doc. 14, at 12). Plaintiff's argument gives rise to the well-known treating physician rule.

The ALJ assigned Dr. Eudela's opinion minimal weight as follows:

> In May 2011[4], the claimant's healthcare provider completed an assessment for the Lucas County Department of Job and Family Services. (Ex. 23F.) It stated that the claimant can stand/walk for two to three hours out of an eight-hour workday, sit for four to five hours out of an eight-hour work day, and lift only up to five pounds. *(Id.)* These conclusions are largely supported by the claimant's subjective pain complaints, rather than objective findings. All in all, the limitations expressed in this report are not consistent with either the minimal/mild objective findings or the conservative course of treatment followed. (Ex. 11F). It is given minimal weight.

(Tr. 28).

---

4. The Court notes that Dr. Eudela actually wrote his assessment sometime after seeing Plaintiff in July 2011 and that the ALJ used the "May 2011" date by mistake. (Tr. 28, 915-17).

11

Here, the ALJ afforded Dr. Eudela's opinion limited weight because it was based on subjective complaints rather than objective findings. (Tr. 28). As the ALJ correctly points out, Plaintiff had been diagnosed with only mild degenerative disc disease in her back and neck, and mild lateral patellar tilt and joint fluid in her left knee, and these conditions did not appear to be worsening in subsequent x-rays. (Tr. 592, 599, 657, 918, 988-89). Plaintiff's right foot did require minor, outpatient surgery and there is evidence Plaintiff had trouble walking and at least sometimes, used a cane; however, the ALJ accommodated for this in Plaintiff's RFC by limiting Plaintiff to jobs that did not require climbing or exposure to hazards, and rarely required balancing, stooping, kneeling, or crawling. (Tr. 21, 1083-86, 1125-26). Plaintiff argues Dr. Eudela detailed these objective findings in forming her opinion, and hence the ALJ's assessment that Dr. Eudela relied only on subjective findings is not accurate. (Doc. 14, at 13. However, these relatively benign findings do not support Dr. Eudela's extreme opinions. (Tr. 28, 915). As the ALJ notes, only conservative treatment was ever recommended for Plaintiff's injuries except for Dr. Elgafy's December 2011, recommendation for a cervical discectomy and fusion for Plaintiff's neck injury. (Tr. 28, 949-50). Plaintiff's insurer denied this claim, however, because more conservative treatments had not been tried. (Tr. 1149). Plaintiff never followed up to comply with this requirement. Hence, the ALJ's finding that only conservative treatment was pursued is supported by substantial evidence.

Plaintiff further asserts the ALJ erred in giving "'substantial weight' to the opinion of non-examining State agency physicians" Drs. Thomas and Holbrook instead of Dr. Eudela, when those physicians had very little of the record before them to review. (Doc. 14, at 14). Although Plaintiff failed to provide legal support for this argument, she ostensibly relies on *Blakley v.*

12

*Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) and its progeny. *See also Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

In *Blakley*, the Sixth Circuit remanded in part because the ALJ improperly elevated the opinion of a non-examining source over that of a treating source even though the non-examining source had not reviewed the treating source's opinion. 581 F.3d at 409. The Court held, "because much of the over 300 pages of medical evidence reflects ongoing treatment and notes by Blakley's treating sources, 'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). However, "*Blakley* does not support remand in any case in which an ALJ has relied upon consultants who were unable to review a complete record." *Linkhart v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 43500, at *25 (S.D. Ohio). The Sixth Circuit reversed, rather, because "the ALJ failed to indicate that he had 'at least considered [that] fact before giving greater weight'" to the consulting physician's opinions. *Id.* (quoting *Blakely*, 581 F.3d at 409). Generally, *Blakely* stands for the proposition that an ALJ must consider all relevant evidence and provide good reasons for the weight afforded to opinion evidence. *Curry v. Colvin*, 2013 WL 5774028, at *17, *19 (N.D. Ohio).

Here, Plaintiff argues Drs. Thomas and Holbrook's opinions were deficient because they did not contain any evaluation of Plaintiff's "knee problems, neck problems, [or] discussion of the neuroma of the foot." (Doc. 14, at 14). Dr. Thomas' opinion was written in July 2010 and affirmed by Dr. Holbrook in October, hence any medical evidence that took place after this date was not considered by the non-examining physicians. (Tr. 638-44, 864).

13

In his decision, the ALJ considered all relevant evidence, then found the state agency opinions supported the RFC. (Tr. 28). By expressly considering all evidence, including evidence submitted after the state agency consultant opined on Plaintiff's case, the ALJ did not err under *Blakely*. Although the ALJ could have been more explicit, he found the evidence produced after the consultants issued their opinions did not change the underlying RFC.

In sum, the ALJ assigned limited weight to Dr. Eudela's opinion because it was inconsistent with the medical evidence of record. In doing so, the ALJ detailed these inconsistencies, thereby providing good reasons, supported by substantial evidence, for discounting Dr. Eudela's opinion and complying with the treating physician rule. Further, because the ALJ considered the record as a whole, he did not err under *Blakely* in assigning greater weight to the non-examining, state agency physicians. Therefore, Plaintiff's argument is not well-taken.

*Nurse Krieger*

Next, Plaintiff argues the ALJ erred in his assessment of Nurse Krieger's opinion. (Doc. 14, at 16). Specifically, Plaintiff alleges the ALJ erred by stating that Nurse Krieger's opinion, "*must* be 'adequately substantiated by the citations to the pertinent record"; describing Plaintiff's therapy as "successful" when her GAF scores increased; referring to Nurse Krieger as Plaintiff's "therapist" which undermines her true treating relationship with her; and by failing to discuss the consistency of Nurse Krieger's opinion with other evidence. (Doc. 14, at 17-19).

Here, Nurse Krieger is classified as an "other source" under the regulations. 20 C.F.R. § 404.1513(d)(1). The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources", including "non-medical sources" listed in §§ 404.1513(d)

14

and 416.913(d). SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). SSR 06-3p also states other sources should be evaluated under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions. *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio 2012) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

The ALJ evaluated Nurse Krieger's opinion as follows:

> I accept that this source has the training and experience that would cause her views to be quite persuasive, provided that they, like any other medical source's opinion, are adequately substantiated by citations to the pertinent record. I do not find that to be the case here. Ms. Krieger's opinion finds the claimant to be markedly impaired in perhaps half to two-thirds of the listed capabilities. (Ex. 25F). As to the remainder, the claimant was found moderately impaired. (*Id.*) Despite this opinion, which suggests a severe case of mental illness, the claimant's treatment consisted solely of medication management and monthly therapy with no inpatient hospitalization. (Ex. 32F) Moreover, the record suggests that this conservative intervention was highly successful, and the claimant's GAF score rose to the mid-to-high 60s, which corresponds to "some mild symptoms." (Ex. 32F; DSM-TR-IV (2000) at 34.) Therefore, I find Ms. Krieger's report to be

15

>     due only minimal weight- not because she lacks a credential, but because it is not supported by the claimant's mental health treatment history.

(Tr. 28).

Here, although the regulations do not require an express analysis of Nurse Krieger's opinion, because she is an "other source" and not a medical source under the regulations, the ALJ nonetheless provides that he is discrediting Nurse Krieger's opinion because it is inconsistent with the evidence of record and provides detailed examples of how this is the case. (Tr. 28). As the ALJ points out, Nurse Krieger's assessment of being markedly impaired in most areas and moderately impaired in the others is consistent with someone diagnosed with severe mental illness, not someone who requires only medication and monthly therapy. (Tr. 28, 1024-65). Moreover, with treatment, Plaintiff's GAF score was improving from someone with moderate symptomatology to someone with mild symptomatology. (Tr. 28,1029, 1034, 1039, 1043, 1047, 1050, 1055, 1058, 1061, 1063, 1065, 1128). Although Plaintiff argues taking note of Plaintiff's GAF scores was not proper since, "the GAF is not an indication of nondisability for Social Security purposes" and the GAF does not have a direct correlation to the severity requirements for Social Security, this point is not well-taken because Plaintiff's GAF scores remain evidence before the ALJ, and as such he is able to consider them as he does all other evidence. *See Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (the Sixth Circuit views GAF scores as "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning"). Hence, the ALJ considered Nurse Krieger's opinion and provided detailed reasons for giving it limited weight, thereby meeting the requirements in the regulations for "other source" opinions. Plaintiff's second assignment of error is without merit.

*Dr. Griffiths*

Plaintiff further argues that the ALJ erred in rejecting the findings of consultative physician Dr. Griffiths. (Doc. 14, at 19). Specifically, Plaintiff argues the ALJ erred by "merely selecting those aspects of Dr. Griffiths' opinion that supported his conclusions while dismissing without explanation that aspect of Dr. Griffiths opinion that conflicted with the conclusion that the [ALJ] sought to reach." (Doc. 14, at 19).

The ALJ assigned weight to Dr. Griffiths' opinion as follows:

> The psychological consultative examiner found the claimant to be moderately impaired in her ability to relate to others in the workplace, mildly impaired in understanding, remember [sic], and following instructions, and moderately impaired in maintaining attention, concentration, persistence, and pace. (Ex. 19F at 5-6.) These findings were supported by observed clinical signs, and they are given substantial weight. However, the consultative examiner goes astray with respect to finding a marked reaction to stress. (Id.) The claimant's allegations of panic attacks are not well-supported and it must be noted that the claimant's allegation of severe mental health impairments is undercut by her failure initially to seek mental health treatment. Thus, this finding is given minimal weight. Nonetheless, the restrictions included in the residual functional capacity, including restrictions on workplace interactions and production standards, adequately account for the restrictions suggested by the consultative examiner.

(Tr. 28).

Contrary to Plaintiff's assertion that the ALJ simply rejected portions of Dr. Griffiths' opinion without providing a reason why, here, the ALJ provides good reasons for rejecting Dr. Griffiths' opinion that Plaintiff has a marked impairment in her reaction to stress based on the lack of evidence to support Plaintiff having panic attacks and Plaintiff's failure to seek mental health care sooner. (Tr. 28). Plaintiff's counseling records reveal she was consistently clean, alert, and cooperative, with a good mood and generally good insight and judgment. (Tr. 1026-28, 1033, 1038, 1041, 1045, 1049, 1054, 1058, 1061, 1063, 1065, 1127). Further, she was assigned GAF scores in the mild range, which is not consistent with someone who is markedly impaired

in their ability to handle stress. (Tr. 1034, 1039, 1043, 1047, 1050, 1055, 1058, 1061, 1063, 1065, 1128). Thus, the ALJ provided good reasons for rejecting Dr. Griffiths' opinion that Plaintiff is markedly limited in her ability to handle stress, namely its lack of supportability and consistency with the mental health evidence of record. Thus, Plaintiff's argument is not well taken.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

    s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).