**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Melissa S. Guyton,                                     Case No. 3:14CV149

          Plaintiff

      v.                                                **ORDER**

Carolyn Colvin,
       Acting Commissioner of Social Security,

          Defendant

        The Social Security Administration (SSA) denied plaintiff Melissa S. Guyton's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff appealed to this court, 42 U.S.C. § 405(g), and the Magistrate Judge's Report and Recommendation (R&R) concluded I should affirm. (Doc. 18). Plaintiff filed timely objections. (Doc. 19).

        For the reasons set forth below, I adopt the Magistrate Judge's recommendation and overrule plaintiff's objections.

**Background**

The R&R sets forth the factual and procedural background in detail, so I summarize only the relevant evidence.

Plaintiff was born on January 22, 1968, has a GED, and no past relevant work. Plaintiff lives with her parents and spends her time watching television, cooking occasionally, and going to the store.

**A.  Plaintiff's Medical History**

Plaintiff has a history of migraines, pain in her left knee, lower back, right foot, and neck.

Plaintiff has suffered from migraine headaches with episodes of facial numbness, weakness, and twitching. Plaintiff's symptoms improved with Topamax and Triptal. In July 2009, plaintiff's treating physician, Sunita Banerjee, M.D., opined that plaintiff's migraine headaches were under control.

In September 2008, plaintiff was in a motor vehicle accident that injured her left knee. Beginning in December 2009, plaintiff sought treatment on numerous occasions for knee pain. An MRI in April 2010 revealed lateral patellar tilt and joint fluid in plaintiff's left knee.

Plaintiff also experiences lower back pain. In November 2009, plaintiff had a lumbar spine x-ray which suggested plaintiff suffered from disc disease. On June 16, 2011, an MRI revealed plaintiff had mild degenerative disc disease at the L4-5 level.

Plaintiff has suffered chronic pain in her right foot since at least April 2010. On April 29, 2010, plaintiff saw Jean Edna, D.P.M., who diagnosed plaintiff with osteoarthritis of the right foot and possible nerve damage, metatarsophalangeal joint instability, and found that plaintiff's left leg was shorter than her right. Dr. Edna recommended conservative treatment, including

injections, whirlpool, taping, and orthotics. In March 2011, plaintiff had outpatient surgery for a neuroma on her right foot. Plaintiff continued to struggle with pain and began using a cane.

In August 2010, plaintiff was in another motor vehicle accident after which she began experiencing neck pain. On May 9, 2011, St. Vincent Mercy Medical Center's Emergency Department treated plaintiff for pain radiating from her right arm and hand to her neck.

On December 9, 2011, plaintiff saw Hossein Elgafy, M.D., for her neck pain. Dr. Elgafy recommended plaintiff have a cervical discectomy and fusion surgery. Plaintiff's insurance denied coverage for the surgery because plaintiff failed to pursue other, more conservative treatments. After surgery was denied, plaintiff did not pursue another treatment option for her neck pain.

Plaintiff has also sought mental health treatment. On September 16, 2010, plaintiff began seeing Cheryl Thompson, PCC, at Harbor Behavioral Health. On examination, plaintiff's behavior was cooperative but anxious; she had average intellect; her speech and judgment were normal; and she had partial insight. Ms. Thompson diagnosed plaintiff with major depressive order, recurrent, moderate, and social phobia, and assigned a global assessment functioning (GAF) score of fifty-two.[1]

Plaintiff saw Carol Krieger, Clinical Nurse Specialist, on November 18, 2010. Plaintiff had continual mental health treatment and counseling with Nurse Krieger through May 2012. During this period, Krieger initially assigned a GAF of fifty-five, then, as the sessions progressed, assigned GAF scores between sixty and sixty-eight.[2] Plaintiff's mental status

---

[1] A GAF score of 51-60 reflects moderate difficulties in social or occupational functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed. Text Rev. 2000) (DSM-IV-TR).

[2] A GAF score of 61-70 reflects mild symptoms, and only some difficulty in social or occupational functioning. DSM-IV-TR, at 34.

examinations during this time indicated she was consistently clean, alert, cooperative, with good judgment, although she struggled with anxiety, negative thoughts, and some compulsions.

### B. Medical Opinion Evidence

In July 2010, state agency medical consultant, Leigh Thomas, M.D., reviewed plaintiff's medical record and provided a physical RFC assessment. Dr. Thomas explained that an MRI of the right foot revealed degenerative changes; an MRI of the left knee was fairly benign; and x-rays of the lumbar spine revealed mild spondylosis. Dr. Thomas's findings led her to conclude that plaintiff could perform a narrowed range of light exertional work.

In October 2010, another state agency medical consultant, Walter Holbrook, M.D., reviewed an updated record of plaintiff's medical history and affirmed Dr. Thomas's previous assessment.

On July 6, 2011, plaintiff's primary care physician, Segunda Eduela, M.D., completed a Basic Medical Form for Lucas County Job and Family Services. Dr. Eduela opined that plaintiff was permanently disabled and unemployable since October 2007, due to an unstable left knee, right foot pain, weakness of the right arm and shoulder, and a tendency to drop things as a result of neck osteoarthritis. Dr. Eduela concluded plaintiff could stand/walk two to three hours and sit four to five hours in an eight-hour work day; could frequently lift/carry up to five points; was moderately limited in her ability to push, pull, reach, and handle; markedly limited in bending; and markedly limited in her capacity to do repetitive foot movements.

Plaintiff underwent a consultative mental health examination on December 10, 2010 with Brian Griffiths, Psy.D. A mental status examination revealed plaintiff had a depressed and anxious mood. Dr. Griffiths diagnosed major depressive disorder, and a recurrent, moderate anxiety disorder. In assessing plaintiff's abilities, Dr. Griffiths opined that plaintiff was

moderately impaired in relating to others; mildly impaired in understanding, remembering, and following simple instructions; moderately impaired in maintaining concentration, persistence, and pace; and markedly impaired in withstanding stress and pressures associated with day-to-day work.

Nurse Krieger completed a Mental Functional Capacity Assessment for the Ohio Department of Job & Family Services on July 20, 2011. Krieger opined that plaintiff was markedly limited in her understanding and memory; markedly limited in concentration and persistence; moderately limited in carrying out short and simple instructions and making simple work-related decisions; moderately limited in social interaction, but markedly limited in her ability to interact with the general public and accept criticism from supervisors; markedly limited in her ability to adapt; and moderately limited in identifying normal hazards and taking appropriate precautions.

### C. The ALJ's Decision

Plaintiff applied for disability and social security benefits in February 2010, alleging disability since June 1, 2007. The SSA denied the application, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). Prior to the hearing, plaintiff amended her alleged disability onset date to January 21, 2010, to reflect her protective filing date.

On October 10, 2012, the ALJ found plaintiff was not disabled, and that she could perform a number of jobs in the national and regional economy, including charge account clerk, check weigher, and final assembler. In his analysis, the ALJ assigns varying degrees of weight to the medical opinions that were presented.

With respect to Dr. Eduela's opinion, the ALJ finds that although Dr. Eduela was a treating physician, her opinion that plaintiff was "permanently disabled" was only entitled to

minimal weight because it was inconsistent the record. The ALJ reasons that Dr. Eduela's opinions "were largely supported by the plaintiff's subjective pain complaints, rather than objective findings," and that "the limitations expressed in [her] report [were] not consistent with either the minimal/mild objective findings or conservative course of treatment followed." (Tr. 28).

The ALJ affords substantial weight to the opinions of Drs. Thomas and Holbrook, both state agency medical consultants. The ALJ concludes that their opinion that plaintiff be limited to light work well-supported by the medical evidence.

The ALJ assigns minimal weight to Nurse Krieger's opinion because her conclusion that plaintiff was markedly impaired in approximately two-thirds of the listed categories was inconsistent with the record. The ALJ explains that Krieger's opinion suggested plaintiff suffered severe mental illness, but plaintiff's "treatment consisted solely of medication management and monthly therapy with no inpatient hospitalization." *Id*. In addition, the record suggested that the "conservative intervention was highly successful, and [plaintiff's] GAF score rose to the mid-to-high 60s, which corresponds to 'some mild symptoms.'" *Id*.

Finally, the ALJ affords substantial weight to some, but not all, of Dr. Griffith's opinion. The ALJ affords minimal weight to Dr. Griffith's conclusion that plaintiff suffered a marked reaction to stress, finding that the conclusion was not well-supported in the record and "undercut by [plaintiff's] failure initially to seek mental health treatment." *Id*.

Plaintiff requested review of the ALJ's decision, but the Appeals Council denied that request. On January 23, 2014, plaintiff brought this suit, contending that the Commissioner's decision should be reversed and the case remanded.

**Standard of Review**

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the [Social Security] Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). I review the Commissioner's decision to determine whether "it is supported by substantial evidence and was made pursuant to proper legal standards." *Id.*

Substantial evidence is evidence that a reasonable mind would accept to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Whether the ALJ has supported the decision with substantial evidence is a question answered in light of "the record taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984).

I review *de novo* those parts of the R&R to which plaintiff specifically objects. 28 U.S.C. § 636(b)(1).

## Discussion

Plaintiff asserts the ALJ erred in evaluating the opinions of 1) treating physician Dr. Segunda Eduela, M.D., 2) consultative examiner Brian Griffiths, Psy.D., and 3) Clinical Nurse Specialist Carol Krieger.

The SSA classifies opinions into three types: treating sources, nonexamining sources, and nontreating sources. 20 C.F.R. § 404.1502. The amount of weight an ALJ gives a medical opinion depends on the opinion's classification.

Treating physicians' medical opinions are generally afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The SSA emphasizes treating source opinions because they are "likely to be medical

7

professionals most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment." § 404.1527(d)(2).

As such, there is a rebuttable presumption that the ALJ will give the treating source physician's opinion controlling weight. *Rogers*, *supra*, 486 F.3d at 244. "An ALJ must give the treating source's opinion on the nature and severity of the claimant's impairment controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of the case record.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing § 404.1527(d)(2)).

If the ALJ does not give the treating-source physician's opinion controlling weight, he must provide "good reasons" for his failure to do so. *Rogers*, *supra*, 486 F.3d at 242. "Good reasons" are those "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Social Security Ruling 96-2p, 1996 WL 374188, *5). This "procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Absent a finding that a treating-source physician's opinion warrants controlling weight, the ALJ must weigh the opinion in accordance with certain factors. "These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Rabbers, supra,* 582 F.3d at 660 (citing §§ 404.1527(d)(2)(i), (d)(3)-(6)).

8

Unlike treating sources, an ALJ need not give "nonexamining sources" and "nontreating sources" deferential weight. *Smith, supra*, 482 F.3d at 877. Rather, the ALJ's treatment of nonexamining and nontreating sources need only be supported by substantial evidence from the record. 42 U.S.C. § 405(g); *Rogers, supra,* 486 F.3d at 241 (6th Cir. 2007).

### A. Dr. Eduela

Plaintiff contends the ALJ erred in assigning treating physician Dr. Eduela's opinion minimal weight. Specifically, plaintiff alleges the ALJ 1) did not provide good reasons for not affording Dr. Eduela's opinion controlling weight, and 2) erred in relying on Drs. Thomas and Holbrook's in concluding that Dr. Eduela's opinion was inconsistent with the record. I disagree.

The ALJ is not required to give a treating-source physician's opinion controlling weight when it is inconsistent with other evidence in the record. Here, the ALJ discounts Dr. Eduela's conclusion that plaintiff had a "permanent disability" because it was "largely supported by plaintiff's subjective pain complaints, rather than objective findings." (Tr. 28). While Dr. Eduela listed some of plaintiff's medical history in her report, including right foot surgery, signs of fluid in her left knee, and degenerative joint disease in her neck and back, the bulk of her opinion is based on plaintiff's own description of her pain, not objective findings that corroborate pain of the magnitude that plaintiff described.

The record shows, contrary to plaintiff's complaints, that plaintiff only suffered mild degenerative disc disease in her back and neck, mild lateral patellar tilt and joint fluid in her left knee, and minimal spondylosis. Subsequent x-rays revealed that plaintiff's conditions were not worsening.

The ALJ also reasons that plaintiff's pain complaints were inconsistent with the conservative course of treatment that physicians recommended for plaintiff's injuries. For

instance, for plaintiff's right foot pain, Dr. Edna only recommended injections, taping, orthotics and outpatient surgery. One physician, Dr. Elgafy, did recommend that plaintiff receive a cervical discectomy and fusion surgery for plaintiff's neck injury. Plaintiff's insurer denied her claim for this procedure, however, and plaintiff never pursued another treatment option.

Furthermore, in comparing Dr. Eduela's conclusion with the rest of the record, the ALJ did not err in considering nonexamining physicians Drs. Thomas and Holbrook's opinions. Plaintiff faults the ALJ for considering their opinions because they did not have the entirety of plaintiff's medical record available for their review. Dr. Thomas wrote the initial opinion in July 2010 and Dr. Holbrook affirmed that opinion in October 2010.

Plaintiff is correct that prior to affording great weight to a consulting physician's opinion that is based on an incomplete review of the record, the ALJ must at least show he has considered that fact. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Here, the ALJ does address the fact that Drs. Thomas and Holbrook reviewed a limited record.

In reaching his conclusion, the ALJ specifically states plaintiff had ongoing allegations of walking difficulties after Drs. Thomas and Holbrook's assessments. The ALJ accommodates this complaint in the RFC by reducing plaintiff's exertional capacity to the sedentary level.

The ALJ also considers medical opinions that were rendered after Drs. Thomas and Holbrook's; specifically, he assesses the opinions that Drs. Eduela and Elgafy rendered on July 6, 2011, and December 9, 2011, respectively. After reviewing the more recent medical evidence, the ALJ still concludes that Drs. Thomas and Holbrook's opinions were "well-supported by the medical evidence." (Tr. 28). The ALJ thus did not err in considering Drs. Thomas and Holbrook's opinions in his analysis.

10

Ultimately, having based his conclusion on a thorough review of the record, substantial evidence supports the ALJ's decision to afford treating physician Dr. Eduela's opinion minimal weight.

## B.  Dr. Griffiths

Plaintiff asserts the ALJ erred by affording minimal weight to the portion of consultative examiner Dr. Griffith's opinion that stated plaintiff had a marked reaction to stress.

The ALJ discounts that portion of Dr. Griffith's opinion because plaintiff's complaints of panic attacks were not well-supported in the record. Plaintiff's counseling records consistently stated that she was clean, alert, cooperative, and maintained generally good insight and judgment. Plaintiff's GAF scores also only corresponded to "mild symptoms," an assessment which is inconsistent with a marked inability to handle stress. The ALJ further highlights that plaintiff's allegations of debilitating mental health issues is undercut by her initial failure to seek treatment. And, despite the ALJ's finding, the ALJ still accounts for Dr. Griffith's concerns in the RFC by restricting plaintiff's workplace interactions and production standards.

Thus, contrary to plaintiff's contention, substantial evidence supports the ALJ's treatment of Dr. Griffith's opinion.

## C.  Nurse Krieger

Plaintiff alleges the ALJ erred in failing to afford Nurse Krieger's opinion greater weight because he improperly evaluated the factors used to weigh "other source" opinions. Plaintiff's contention lacks merit.

An ALJ "has discretion to determine the proper weight to accord opinions from 'other sources.'" *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541 (6th Cir. 2007). As a nurse practitioner, Ms. Krieger's opinion is classified as an "other source." 20 C.F.R. 404.1513(d)(1).

Although opinions from "'other sources' cannot establish the existence of a medical impairment, the information 'may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*. (quoting SSR 06-03P, 2006 WL 2329939 at *3 (S.S.A.)). The ALJ generally should explain the weight given to "other source" opinions when the opinion may affect the case's outcome. SSR 06-03P at *7. "[O]pinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Id*. (citing *Martin v. Barnhart*, 470 F.Supp.2d 1324, 1328-29 (D. Utah 2006) & SSR 06-03P, at *5-6).

The ALJ explains that he discredited Krieger's opinion because it was inconsistent with the record as a whole. Krieger concluded that plaintiff was "markedly impaired" in two-thirds of the listed capabilities and "moderately impaired" in the rest—a finding that suggests a severe mental illness. But the record contained no suggestions that plaintiff had a severe mental illness: plaintiff's treatment consisted of self-administered medication; she underwent monthly out-patient, rather than in-patient, therapy; and the conservative treatment resulted in plaintiff's GAF score rising to the mid-to-high sixties, which corresponds to "mild symptoms." (Tr. 28).

Plaintiff contends that had the ALJ looked more closely at factors such as the length of plaintiff's relationship with Ms. Krieger he would have reached a different conclusion. The ALJ however, has discretion in balancing the factors used to determine the weight he affords to "other source" opinions. In exercising that discretion, the ALJ provides substantial evidence supporting his conclusion that Krieger's opinion was inconsistent with the record and thus only entitled to minimal weight.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

1. The Magistrate Judge's Report and Recommendation be, and the same hereby is, adopted by this Court. (Doc. 18).

2. Accordingly, the Court overrules plaintiff's objections.

3. The decision of the Commissioner is affirmed.

4. This action is hereby dismissed.


So ordered.

/s/ James G. Carr

Sr. U.S. District Judge